## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SILCOTEK CORPORATION,

                             Plaintiff,

v.

WATERS CORPORATION,

                             Defendant.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SilcoTek Corporation (hereinafter, "SilcoTek"), by and through its undersigned

counsel, hereby avers and alleges the following in support of its Complaint against Defendant

Waters Corporation (hereinafter, "Waters"):

## NATURE OF THE ACTION

1.    This is an action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. § 1 *et seq*., for infringement of two patents.  SilcoTek alleges that

Waters infringes at least one claim of each of the following U.S. Patents: U.S. Patent No.

12,291,778 entitled, "Liquid Chromatography System and Component" ("the '778 patent"), a

true and correct copy of which is attached hereto as Exhibit A, and U.S Patent No. 12,522,732,

entitled "Amorphous Coating" ("the '732 patent"), a true and correct copy of which is attached

hereto as Exhibit B (collectively, the "Asserted Patents").

## THE PARTIES

2.    SilcoTek is a Pennsylvania corporation having a principal place of business at 225

Penntech Dr., Bellefonte, Pennsylvania 16823.  SilcoTek is a leader in the coating industry and

manufactures coatings for and applies coatings to various materials and devices.  SilcoTek

supplies customers in this District and around the world from its single facility in Bellefonte, Pennsylvania.

3.      Upon information and belief, Waters is a Delaware corporation having a principal place of business at 34 Maple Street, Milford, Massachusetts 01757. Upon information and belief, Waters is a specialty measurement company that designs, manufactures, sells and services among other products high performance liquid chromatography ("HPLC") technology systems and support products, including chromatography columns, and other consumable products. Upon information and belief, Waters employs more than 16,000 people worldwide and operates in over 35 countries, including 14 manufacturing facilities, and has products available in more than 100 countries.

## JURISDICTION AND VENUE

4.      This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Waters due, *inter alia*, to its incorporation in Delaware, and upon information and belief, its continuous presence in, and systematic contact with, Delaware. Waters is further subject to this Court's jurisdiction, upon information and belief, at least because of Waters' substantial business in Delaware, including at least part of its past and ongoing infringing activities at issue in this action, regularly doing or soliciting business in Delaware, and engaging in persistent conduct and/or deriving substantial revenue from goods and services provided in Delaware. Upon information and belief, Waters, directly and/or through intermediaries, has committed and continues to commit acts of

infringement in Delaware by, among other things, using, offering to sell, and selling products that infringe one or more apparatus claims of, the Asserted Patents.

7.     SilcoTek conducts business in Delaware and thus in this District and has regular customers with principal places of business in this District. In light of Waters' supply of infringing products in this District, SilcoTek has suffered harm in this District.

8.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Waters is incorporated in the State of Delaware and, upon information and belief, has committed acts of infringement in Delaware.

9.     In addition, on information and belief, Waters has previously availed itself of this District by bringing and defending against patent infringement matters in this District including, for example, *Waters Corporation and Waters Technologies Corp. v. Agilent Technologies Inc.*, Civil Action No. 1:18-cv-01450-MN, filed on September 18, 2018, and *SilcoTek Corp. v. Waters Corporation*, Civil Action No. 1:23-cv-00281-MN, filed on March 16, 2023.

## THE ASSERTED PATENTS

10.     On May 6, 2025, the '778 patent was duly and legally issued to named inventor Gary A. Barone on an application filed on June 14, 2024. *See* Exhibit A. SilcoTek has been, and is today, the assignee and owner of all right, title, and interest in and to the '778 patent. The '778 patent is a continuation of Application No. 17/411,545, filed on Aug. 25, 2021, now U.S. Patent No. 12,037,685, which is a continuation of Application No. 16/870,034, filed on May 8, 2020, now U.S. Patent No. 11,131,020, which is a continuation of Application No. 15/755,962, filed as Application No. PCT/US2016/049647 on Aug. 31, 2016, now U.S. Patent No. 10,876,206. The '778 patent claims priority to provisional Application No. 62/212,868, filed on Sep 1, 2015.

11.     On January 13, 2026, the '732 patent was duly and legally issued to named inventors David A. Smith, James B. Mattzela, Paul H. Silvis, Gary A. Barone, and Martin E. Higgins based on an application filed on June 8, 2023.  *See* Exhibit B.  SilcoTek has been, and is today, the assignee and owner of all right, title, and interest in and to the '732 patent.  The '732 patent was a filed as a continuation of U.S Patent Application No. 16/801,230, filed on February 26, 2020, now U.S. Patent No. 11,807,777, which is a divisional of Application No. 13/876,328, filed as Application No. PCT/US2011/054835 on Oct. 5, 2011, now U.S. Patent No. 10,604,660. The '732 patent claims priority to provisional Application No. 61/507,650 filed on July 14, 2011, and provisional Application No. 61/389,777, filed on October 5, 2010.

**BACKGROUND AND FACTS**

12.     SilcoTek is a well-known coating service provider, especially for analytical instrumentation and components for gas chromatography ("GC").  However, Waters is far greater in size and revenue than SilcoTek and wields substantial market power, especially within the High-Performance Liquid Chromatography ("HPLC") industry, which is an analytical instrumentation process outside the scope of GC.

13.     On multiple occasions, Waters has acknowledged that SilcoTek has extensive coatings experience. To SilcoTek's best belief, Waters' representatives have attended every public HPLC-related presentation ever given by Dr. Jesse Bischof of SilcoTek, of which there have been numerous presentations.  For example, at Eastern Analytical Symposium in 2021, during a presentation by Waters' representatives, Waters' representatives even acknowledged Dr. Jesse Bischof during their own presentation when asked complicated questions about metal interactions of surfaces in the presence of solvents.  They referred to him as the world-leading

expert, due to him being a pioneer in using a coating to prevent issues with metal ion contamination and proteins for HPLC analysis.

14.    High-performance Liquid Chromatography ("HPLC") is a technique in analytical chemistry used to separate, identify, and quantify each component in a mixture. It relies on pumps to pass a pressurized liquid solvent containing the sample mixture through a column filled with a solid adsorbent material. Each component in the sample interacts slightly differently with the adsorbent material, causing different flow rates for the different components and leading to the separation of the components as they flow out of the column.

15.    SilcoTek coating services are used in HPLC applications to prevent interaction of the test analyte with the flow path surface in the column. SilcoTek's inert coating services like Dursan® prevent adsorption, reactivity, and improve surface corrosion resistance. Dursan® coating service is bonded to stainless steel chromatography columns, making a high tolerance durable coating even under extreme temperatures and pressures.

16.    Such coating services are available due to SilcoTek's innovative culture, which includes an "In the Light" core value. SilcoTek develops unique coatings, examines unique applications, tests such coatings in unique applications, and publishes information. To foster such open collaboration, SilcoTek files patent applications based upon early-stage inventions.

17.    Waters has long known of SilcoTek and had relationships with SilcoTek. For example, on October 16, 2009, Waters and SilcoTek entered into a Confidentiality Agreement protecting Waters, and not protecting SilcoTek. SilcoTek's obligations lasted for ten (10) years from the date of disclosure of Waters' proprietary information marked "WATERS PROPRIETARY INFORMATION" or the equivalent. Waters periodically sent small orders to SilcoTek based upon representations that such orders were for qualification of SilcoTek's

coating services or for commercial purposes.  Waters never identified any orders as being for benchmarking and, to the contrary, made representations regarding the high sales volume that could be achieved by working with Waters.  All orders from Waters of SilcoTek coating services have been under SilcoTek's standard terms and conditions.

18.     On or about February 8, 2017, Waters requested to meet with a relatively new sales employee from SilcoTek, Ashley Rhodes, at the Pittsburgh Conference for Analytical and Applied Spectroscopy in Chicago ("Pittcon").  On or about April 3, 2017, Waters contacted Ashley Rhodes requesting a tour of SilcoTek to be scheduled in either April, May, or June of 2017, initiating the process of entering into a mutual non-disclosure agreement.  On or about September 8, 2017, after numerous communications resulting in SilcoTek ultimately agreeing to accept Waters' form version of their mutual non-disclosure agreement as offered by Waters, Waters scheduled a visit to SilcoTek for October 18, 2017.

19.     On or about September 17, 2017, Waters filed a provisional patent application identifying SilcoTek's Dursan® coating service.  Specifically, Waters filed a U.S. patent application, Application Serial No. 62/559,895, for a vapor deposition coated flow path for Liquid Chromatography ("LC") columns on September 18, 2017 that included a reference to SilcoTek's Dursan® coating service.  *See* Exhibit C, page 10, lines 2-3.

20.     On or about October 17, 2017, one day before the scheduled visit, Waters informed SilcoTek that the decision was made at the last minute to not sign the mutual non-disclosure agreement as offered by Waters.  On or about October 18, 2017, representatives from Waters visited SilcoTek.

21.     Representatives from Waters visited SilcoTek on September 13, 2019, during which meeting the primary discussion focused on the use of SilcoTek's Dursan® coating service for HPLC components, including for Waters' Premier line of HPLC columns.

22.     Upon information and belief, Waters released their "Premier" or "MaxPeak Premier" line of columns and equipment for use in HPLC applications in 2020.  Waters' Premier or MaxPeak Premier line of columns are coated with Waters' MaxPeak™ High Performance Surfaces ("HPS").  Waters advertises MaxPeak™ HPS as based on hybrid silica or built using ethylene bridged hybrid particles.  *See*, *e.g.*, Exhibit D, Waters Website (Atlantis Premier BEH Z-HILIC Column, 5 μm, 2.1 mm X 150 mm, 1/pk - 186010001 | Waters); Exhibit E, Waters Website (Shop Atlantis PREMIER BEH C18 AX Columns | 186009368 | Waters); Exhibit F, MaxPeak Premier Columns, Small Molecule Application Notebook at 7, 14.  Waters touts that the MaxPeak™ HPS technology significantly reduces unwanted analyte/surface interactions that can lead to poor peak shape and losses in signal intensity.  *See* Exhibit D.

23.     Upon information and belief, Waters sells and offers for sale their Premier line of columns incorporating MaxPeak™ HPS technology under product names, including, without limitation, "Atlantis Premier," "ACQUITY Premier," "XBridge Premier," "XSelect Premier," and "CORTECS Premier."  *See* Exhibit G, Waters Website (Columns | HPLC, UPLC, UHPLC, SFC, GPC, SEC | Waters); Exhibit H, Waters Website (MaxPeak Premier Columns | LC Columns to Prevent Non-Specific Adsorption | Waters).

24.     Waters' manufacture, use, offer to sell, selling, and/or importation of its Premier line of columns incorporating MaxPeak HPS technology infringes directly, literally or under the doctrine of equivalents, the claims of the '778 and '732 patents.

25. Waters' infringement is and/or will continue to be willful. As detailed above, Waters has long known of SilcoTek and had relationships with SilcoTek. Waters has visited SilcoTek's single facility on multiple occasions and has seen and purchased components, including columns, treated with SilcoTek's Dursan® coating service. In addition, Waters' representatives have attended presentations over the years by Dr. Jesse Bischof of SilcoTek, and even have requested presentation materials.

26. SilcoTek marks its brochures and website for its coatings like Dursan® with notes such as "(patent info at www.silcotek.com/IP)." *See*, *e.g.*, Exhibit I (Dursan Coating Data Sheet). The referenced URL on the SilcoTek website is directly accessible to the public without charge and corresponds to a list of SilcoTek's patents. Both the '778 and '732 patents are included on this list. *See* Exhibit J (SilcoTek Intellectual Property). Upon information and belief, Waters has seen columns with SilcoTek coatings such as Dursan® and has reviewed or viewed SilcoTek's website, brochures, list of patents, and patents.

27. Waters knew or should have known of the '778 patent and the '732 patent when they issued in 2024 and 2026, respectively, at least given that they are listed on SilcoTek's patent list and given Waters' long-time interactions with SilcoTek relating to Dursan® coating service. Waters also knew or should have known about the earlier published applications for the '778 patent and the '732 patent.

28. On June 21, 2024 and November 19, 2024, outside counsel to SilcoTek identified and/or sent copies of patents and patent applications to which the '778 patent and the '732 patent claimed priority to Waters' counsel as part of settlement efforts.

29. Waters markets and sells its Premier line of columns incorporating MaxPeak HPS technology to the same or substantially similar customers who purchase SilcoTek Dursan®

coating service or HPLC components treated with SilcoTek's Dursan® coating service.  Waters and SilcoTek are thus direct competitors in at least selling and offering to sell coating services for chromatography coatings, including columns, and HPLC systems sold with columns.

30.     Any infringement by Waters has caused, is causing, and/or will continue to cause irreparable injury and harm to SilcoTek for which SilcoTek has no adequate remedy at law, including loss of market share.

31.     SilcoTek has been and/or will be damaged by Waters' infringement, at least in the form of SilcoTek's lost profits and/or lost licensing revenue due to Waters' infringement.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 12,291,778

32.     SilcoTek repeats and re-alleges the averments set forth in paragraphs 1 through 31 of this Complaint by reference as if fully set forth herein.

33.     The '778 patent claims, *inter alia*, a tube comprising an amorphous coating that includes silicon.

34.     Waters has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '778 patent in violation of 35 U.S.C. §271(a) by, for example and without limitation, manufacturing, offering to sell, and selling the claimed tube in the United States, namely, its Premier lines of columns incorporating MaxPeak HPS technology.

35.     For example, claim 1 of the '778 patent is reproduced below:

> 1.  A tube, comprising:
>
> a substrate; and
>
> an amorphous coating on the substrate; wherein the amorphous coating includes silicon; wherein the amorphous coating is devoid of particles of silicon dust formed from gas phase nucleation that are greater than 3 micrometers.

36.    As a non-limiting example, Waters Atlantis PREMIER BEH $C_{18}$ AX Column comprises all elements of claim 1 of the '778 patent. *See*, *e.g.*, Exhibit E, Waters Website (Shop Atlantis PREMIER BEH C18 AX Columns | 186009368 | Waters).

37.    On information and belief, Waters makes, uses, offers to sells, sells, and/or imports "a tube" namely an Atlantis PREMIER BEH $C_{18}$ AX Column incorporating MaxPeak HPS technology.

38.    On information and belief, an Atlantis PREMIER BEH C18 AX Column comprises "a substrate."  For example, X-Ray Fluorescence confirmed that the Atlantis PREMIER BEH C18 AX Column is 316 Stainless Steel (approximately 17.80% Cr, 1.86 Mn, 63.71% Fe, 13.70% Ni, 2.88% Mo) as shown in Figure 1 set forth in Paragraph 39.  In addition, an article by Waters in a scientific journal indicates that Waters uses a metal substrate as shown in the below figure from the article:



*See* Exhibit K, page 5773.

39.    Testing has confirmed that Atlantis PREMIER BEH $C_{18}$ AX Column made and sold by Waters meets the additional limitation of claim 1 of the '778 patent that the "tube" comprises "an amorphous coating on the substrate; wherein the amorphous coating includes silicon."   X-Ray Fluorescence confirmed that the Atlantis PREMIER BEH $C_{18}$ AX Column comprises a substrate of 316 Stainless Steel (approximately 17.80% Cr, 1.86 Mn, 63.71% Fe, 13.70% Ni, 2.88% Mo) as shown in Figure 1 below:



Figure 1

Further, Fourier Transform Infrared Spectroscopy confirmed the presence of silicon in the coating on the Atlantis PREMIER BEH $C_{18}$ AX Column as shown in Figure 2 below:



Figure 2

In addition, an article by Waters in a scientific journal indicates that Waters uses a coating that includes silicon as shown in the below figure from the article:



*See* Exhibit K, page 5773.

40.     Additional testing on a new Waters' column obtained by SilcoTek indicates that the coating is amorphous based upon not having active Raman spectroscopic peaks and energy-dispersive X-ray spectroscopy (EDS) results for the tube and frit of the column shown below in Figures 3 and 4, which also show the coating includes silicon:



Figure 3: EDS point on the tube



Figure 4: EDS point on the frit

41.   Upon information and belief, observation and inspection of the Atlantis PREMIER BEH $C_{18}$ AX Column indicates that the amorphous coating is devoid of particles of silicon dust formed from gas phase nucleation that are greater than 3 micrometers. Scanning Electron Microscope (SEM) test results of the tube after removal of packing materials shown below in Figures 5 and 6 show no dust particles over 3 micrometers:



Figure 5



Figure 6

42.    Waters has thus directly infringed at least claim 1 of the '778 patent.

43.    On information and belief, Waters' other lines of Premier columns incorporating MaxPeak HPS technology including but not limited to at least the "Atlantis Premier," "ACQUITY Premier," "XBridge Premier," "XSelect Premier," and "CORTECS Premier" columns also directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '778 patent for the same reasons set forth in the above paragraphs.  *See* Exhibit G, Waters Website (Columns | HPLC, UPLC, UHPLC, SFC, GPC, SEC | Waters); Exhibit H, Waters Website (MaxPeak Premier Columns | LC Columns to Prevent Non-Specific Adsorption | Waters).

44.    Upon information and belief, Waters had actual knowledge of the '778 patent prior to the filing of this Complaint.

45.    Upon information and belief, Waters knows or is willfully blind to the fact that Waters' actions have infringed and/or will infringe the '778 patent with the knowledge and intent that one or more claims of the '778 patent be infringed.

46.    Waters' infringement has caused, is causing, and/or will cause SilcoTek to suffer irreparable injury for which SilcoTek has no adequate remedy at law, including loss of market share and customer goodwill.  Waters' willful infringement will continue unless enjoined by the Court.  SilcoTek is therefore entitled to a preliminary and permanent injunction against Waters' further infringement of the '778 patent.

47.    As a direct result of Waters' infringing activities, SilcoTek has been and/or will be damaged in an amount to be determined at trial.  SilcoTek is entitled to recover all damages from Waters and the total profits lost due to Waters' infringement in an amount proven at trial, but no less than a reasonable royalty as provided by 35 U.S.C. § 284, before any enhancement for the willfulness of Waters' infringement.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,522,732

48.    SilcoTek repeats and re-alleges the averments set forth in paragraphs 1 through 47 of this Complaint by reference as if fully set forth herein.

49.    The '732 patent claims, *inter alia*, an article comprising an anti-stiction, wear-resistant chemical vapor deposition coating comprising carbon, hydrogen, oxygen and amorphous silicon.

50.    Waters has directly infringed, either literally or under the doctrine of equivalents, at least claim 2 of the '732 patent in violation of 35 U.S.C. §271(a) by, for example and without limitation, making, using, offering to sell, selling, and/or importing in and to the United States the Premier lines of columns incorporating MaxPeak HPS technology and its chromatography

- 17 -

systems that comprise and/or use its Premier lines of columns incorporating MaxPeak HPS technology.

51.    For example, claim 2 of the '732 patent is reproduced below:

1.    An article comprising:

an anti-stiction, wear-resistant chemical vapor deposition coating deposited at a temperature of greater than 300° C., the anti-stiction, wear-resistant chemical vapor deposition coating comprising:

carbon, hydrogen, oxygen and amorphous silicon;

wherein the article is a piston head, a piston cylinder, tubing, a fitting, a rotary valve, a ball valve, a slide valve, an injector, a piston ring, a sliding o-ring, a cylinder, a regulator, a mixing system, a sampling apparatus, or an analytical system.

52.    As a non-limiting example, on information and belief, Waters' Atlantis PREMIER BEH $C_{18}$ AX Column incorporating MaxPeak HPS technology is "an article" comprising all of the elements of claim 2 of the '732 patent.  *See* Exhibit E, Waters Website (Shop Atlantis PREMIER BEH C18 AX Columns | 186009368 | Waters).

53.    On information and belief, an Atlantis PREMIER BEH $C_{18}$ AX Column incorporating MaxPeak HPS technology comprises "tubing" or "a sampling apparatus, or an analytical system."  *See* Exhibit E, Waters Website (Shop Atlantis PREMIER BEH C18 AX Columns | 186009368 | Waters).

54.    On information and belief, an Atlantis PREMIER BEH $C_{18}$ AX Column incorporating MaxPeak HPS technology comprises "an anti-stiction, wear-resistant chemical vapor deposition coating deposited at a temperature of greater than 300° C, the anti-stiction, wear-resistant chemical vapor deposition coating comprising: carbon, hydrogen, oxygen and amorphous silicon."  For example, Fourier Transform Infrared Spectroscopy as shown in Figure 2 above implies presence of an anti-stiction, wear-resistant chemical vapor deposition coating on

an Atlantis PREMIER BEH $C_{18}$ AX Column incorporating MaxPeak HPS technology.  In addition, Waters describes the MaxPeak HPS technology used on the Atlantis PREMIER BEH $C_{18}$ AX Column as "designed to increase analyte recovery, sensitivity, and reproducibility by minimizing analyte/surface interactions."  *See* Exhibit E, Waters Website (Shop Atlantis PREMIER BEH C18 AX Columns | 186009368 | Waters).  Further, news articles authored by Waters employees indicate that the MaxPeak HPS technology is "formed by a vapor deposition of an ethylene-bridged siloxane polymer on metal substrates."  *See* Exhibit L, "Advantages of Hybrid Surface Technology to Improve Chromatographic Analysis of Food, Beverages, and Dietary Supplements" authored by Stephanie N. Harden, Jinchuan Yang, Paul Rainville (https://www.chromatographyonline.com/view/advantages-of-hybrid-surface-technology-to-improve-chromatographic-analysis-of-food-beverages-and-dietary-supplements).

55.    On information and belief, the "coating" for the Atlantis PREMIER BEH $C_{18}$ AX Column incorporating MaxPeak HPS technology comprises an "anti-stiction, wear-resistant chemical vapor deposition coating comprising: carbon, hydrogen, oxygen and amorphous silicon" as indicated by the results of the Fourier Transform Infrared Spectroscopy as shown in Figure 2 which confirmed the presence of carbon, hydrogen, oxygen and amorphous silicon in the coating on the Atlantis PREMIER BEH $C_{18}$ AX Column.  As shown in Figures 2 and 3 above, the EDS results clearly show carbon, oxygen, and silicon, and although hydrogen is undetectable due to how light it is, upon information and belief, it is present.  Upon information and belief, the coating is amorphous based upon not having active Raman spectroscopic peaks.  In addition, an article by Waters in a scientific journal indicates that Waters uses a coating comprising carbon, hydrogen, oxygen and amorphous silicon as shown in the below figure from the article.  *See* Exhibit K, page 5773.

56.     Waters has thus directly infringed at least claim 2 of the '732 patent by making, using, offering to sell, selling, and/or importing in and to the United States the Atlantis PREMIER BEH $C_{18}$ AX Columns incorporating MaxPeak HPS technology.

57.     On information and belief, Waters' other lines of Premier columns incorporating MaxPeak HPS technology including but not limited to at least the "Atlantis Premier," "ACQUITY Premier," "XBridge Premier," "XSelect Premier," and "CORTECS Premier" columns also directly infringe, either literally or under the doctrine of equivalents, at least claim 2 of the '732 patent for the same reasons set forth in the above paragraphs. *See* Exhibit G, Waters Website (Columns | HPLC, UPLC, UHPLC, SFC, GPC, SEC | Waters); Exhibit H, Waters Website (MaxPeak Premier Columns | LC Columns to Prevent Non-Specific Adsorption | Waters).

58.     Upon information and belief, Waters had actual knowledge of the '732 patent prior to the filing of this Complaint.

59.     Upon information and belief, Waters knows or is willfully blind to the fact that Waters' actions have infringed and/or will infringe and have induced and contributed and/or will induce and contribute to infringement of the '732 patent with the knowledge and intent that one or more claims of the '732 patent be infringed.

60.     Waters' infringement has caused, is causing, and/or will cause SilcoTek to suffer irreparable injury for which SilcoTek has no adequate remedy at law, including loss of market share and customer goodwill.  Waters' willful infringement will continue unless enjoined by the Court.  Waters is therefore entitled to a preliminary and permanent injunction against Waters' further infringement of the '732 patent.

61.     As a direct result of Waters' infringing activities, SilcoTek has been and/or will be damaged in an amount to be determined at trial.  SilcoTek is entitled to recover all damages from Waters and the total profits lost due to Waters' infringement in an amount proven at trial, but no less than a reasonable royalty as provided by 35 U.S.C. § 284, before any enhancement for the willfulness of Waters' infringement.

**WHEREFORE**, SilcoTek respectfully requests judgment be entered against Waters as follows:

A.     The '778 patent has been infringed by Waters;

B.     Waters' infringement of the '778 patent has been willful;

C.     The '732 patent has been infringed by Waters;

D.     Waters' infringement of the '732 patent has been willful;

E.     An award of damages adequate to compensate SilcoTek for the infringement, in the form of at least a reasonable royalty, and/or Waters' profits resulting from the infringement together with prejudgment interest from the date the infringement began;

F.     Any damages permitted in the Court's equitable discretion;

G.     A finding that this case is exceptional under 35 U.S.C. § 285 and an award to SilcoTek of its attorneys' fees, costs, and expenses in this action;

H.     An injunction permanently enjoining Waters, its affiliates, officers, directors, employees, agents, licensees, subsidiaries, successors, and assigns, and any and all persons acting in privity or in concert with any of them who receive notice of the injunction, including distributors, sales representatives, and customers, from further acts of infringement of the '778 patent and the '732 patent; and

I.     Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, SilcoTek hereby demands a trial by jury of all issues triable by jury.

*Of Counsel:*

Cecilia R. Dickson
Kent E. Baldauf, Jr.
Barry J. Coyne
The Webb Law Firm
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
(412) 471-8815
cdickson@webblaw.com
kbaldaufjr@webblaw.com
bcoyne@webblaw.com

Dated: June 30, 2026

/s/ *Francis DiGiovanni*
Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Plaintiff SilcoTek Corporation*